# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| FRANK LORD<br>21183 Aberdeen Rd.<br>Rocky River, Ohio 44116<br>On behalf of himself and all those similarly situated<br><br>Plaintiff,<br><br>v.<br><br>KISLING, NESTICO & REDICK, LLC<br>4490 Litchfield Drive<br>Copley, Ohio 44321<br><br><u>ALSO SERVE STATUTORY AGENT:</u><br><br><u>Gary W. Kisling</u><br><u>816 Thelma Dr.</u><br><u>Wadsworth, Ohio 44281</u><br><br>And<br><br>WIRE2AIR MOBILE SOLUTIONS<br>228 Park Avenue S<br>New York, NY 10003<br><br>Defendants. | CASE NO.<br><br>JUDGE:<br><br><br><br><br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>(Jury Demand Endorsed Hereon) |

Plaintiff, Frank Lord, brings this action on behalf of himself and all others similarly-situated, against Kisling, Nestico, & Redick, LLC ("KNR") and Wire2Air Mobile Solutions ("Wire2Air") (Hereinafter referred to collectively as "Defendants") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"),[1] and to recover statutory damages and other relief for all persons who received unsolicited and unauthorized text messages from Defendants.

---

[1] The TCPA is codified at section 227 of the Communications Act of 1934, as amended.

Plaintiff's allegations are based upon information and belief and the investigation of counsel, except those pertaining to Plaintiff's own actions, which are based on personal knowledge.

## INTRODUCTION

1. Plaintiff Frank Lord ("Mr. Lord" or "Plaintiff") brings this putative class action against the Defendants to secure redress for their violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

2. This case challenges Defendants' practices of unlawfully sending predictive and/or autodialed telemarketing text messages to wireless/cellular telephones ("wireless phones") without prior express written consent as required by the TCPA.

3. Plaintiff is one of many call recipients, believed to number in the hundreds of thousands, who received illegal unauthorized text messages from Defendants promoting their legal services.

4. Plaintiff brings this action to enforce the consumer privacy provisions of the TCPA and achieve redress and compensation for affected consumers. In a case such as this, where individual damages are set by statute at $500-$1,500 per violation, a class action is the best if not the only means of obtaining redress for the type of wide-scale, illegal texting at issue, and is consistent both with the private right of action afforded by the TCPA, and the fairness and efficiency goals of Fed. R. Civ. P. 23.

5. Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Federal Communications Commission ("FCC").[2] On July 10, 2015 the FCC issued its TCPA Omnibus Declaratory Ruling

---

[2] TCPA Omnibus Declaratory Ruling and Order, CG Docket No. 02-278, Declaratory Ruling and Order, 30 FCC Rcd. 7961, ¶1 (2015) ("FCC Order").

and Order which preserved consumers' rights to stop unwanted robocalls, including both voice calls and texts.[3] In enacting the TCPA, Congress made clear that "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices."[4]

6. Here, KNR transmitted, and/or, upon information and belief, directed Wire2Air to transmit, unauthorized telemarketing and/or informational material soliciting its legal services in the form of "text messages" to cell phones including or introducing an advertisement or message for the purpose of encouraging the consumer to purchase unsolicited legal services from KNR in the form of representation in personal injury cases.[5]

7. Defendants did not have Plaintiff's prior written consent to send autodialed and/or predictive text messages to his wireless phone. In fact, Defendants had no authorization at all from Plaintiff.

8. The TCPA grants consumers a private right of action, with provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and the Court may increase those damages up to three times when it determines a violation was knowing or willful.[6] On behalf of himself and all others similarly-situated, Plaintiff seeks statutory damages for each violation of the TCPA by Defendants, and requests that the Court treble those damages.

9. On behalf of the Class, Plaintiff also seeks an injunction requiring Defendants to cease all unlawful text messages, together with costs and reasonable attorneys' fees as appropriate.

---

[3] *Id.*
[4] *Id.*, at P2.
[5] 47 C.F.R. § 64.1200(a)
[6] 47 U.S.C. § 227(b)(3)

## PARTIES

10.     Plaintiff is an Ohio resident, at all times pertinent hereto residing at 21183 Aberdeen Rd., Rocky River, Ohio, County of Cuyahoga.

11.     KNR is an Ohio law firm predominantly focusing on personal injury plaintiff cases who aggressively advertise in the State of Ohio using a tag line, "Hurt in a car? Call KNR."

12.     Wire2Air is a New York company selling its services in Ohio.  Wire2Air offers a litany of services one of which is a program for a business to build text message campaigns with Wire2Air's bulk text messaging tool.  Wire2Air offers a bulk text message program and web based application for a business to send and receive millions of text messages at one time.  Another part of Wire2Air's programs and services allows its business clients to send thousands of text messages easily from the client's computer.[7]

13.     Defendants, directly or else through other persons acting on their behalf, conspired to, agreed to, contributed to, assisted with, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the text messages that are the subject matter of this Complaint.

## JURISDICTION

14.     Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the TCPA, a federal statute.

15.     This Court has personal jurisdiction over Defendants because they conduct business within the State of Ohio.

---

[7] http://www.wire2air.com/

16. Venue in this action is proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1391 because Defendants committed a statutory tort within this District and a significant portion of the events giving rise to Plaintiff's claims took place here.

## BACKGROUND FACTS

17. This case challenges Defendants' practices of sending autodialed[8] text messages,[9] to wireless/cellular telephones ("wireless phones") without prior express written consent.[10]

18. Upon information and belief, KNR obtains the cell-phone numbers of persons recently involved in a motor vehicle accident from police reports throughout the State of Ohio, and then inputs those phone numbers into the autodialing program developed by Defendant Wire2Wire and sends out unauthorized mass text advertisements to those phone numbers.

19. Short Message Service ("SMS"), more commonly known as "text messaging," is a popular means for communicating among cell phone subscribers.

20. The most common form of text messaging is person-to-person messaging. Text messages may also be sent by automated systems to facilitate the ordering of products and services from cell phones or for participating in contests or other marketing programs.

21. Businesses continually seek cost-effective ways to market their goods and services. The popularity of cell phones and text messaging has created a marketing opportunity for businesses but their telemarketing efforts are limited by restrictions on telephone, facsimile, and email solicitations.

---

[8] The TCPA defines "automatic telephone dialing system" as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). See also the FCC Order for the FCC's very broad and expansive definition of "autodialer." FCC Order, para. 10-24.

[9] "Calls" include text messages. See *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, para. 165 (2003). See also 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii).

[10] 47 C.F.R. § 64.1200(a)(2), (f)(8)(i).

22. According to the FCC, "Month after month, unwanted . . . texts, both telemarketing and informational, top the list of consumer complaints received by the Commission. The [TCPA] and [FCC] rules empower consumers to decide which . . . text messages they receive, with heightened protection to wireless consumers…."[11]

23. The FCC has explained, "Calling and texting consumers *en masse* has never been easier or less expensive" in part, because skyrocketing growth of mobile phones, rising from approximately 140 million wireless subscriber connections in 2002 to approximately 326 million in 2012.[12] Additionally, 39 percent of adults were wireless-only in the second half of 2013, compared to fewer than three percent of adults at the beginning of 2003."[13]

24. The intent of Congress, when it established the TCPA in 1991, was to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed [text messages] calls generate.[14] Congress found that banning such text messages, except when the party consents, "is the only effective means of protecting telephone consumers from this nuisance and privacy invasion."[15] Congress therefore put the responsibility for compliance with the law directly on the party that "makes" or "initiates" autodialed and/or predictive text messages.[16]

25. At issue here, Defendants transmitted text messages to cell phone users – including Plaintiff and the other members of the putative class – to promote KNR's services – without Plaintiff's and the putative Class Members' authorization.

---

[11] FCC Order, para. 1
[12] FCC Order, para. 7, n. 32
[13] According to a 2012 study by the Pew Research Center, 69% of cell phone users who use text messaging receive unwanted text message spam, and "[o]f those texters, 25% face problems with spam/unwanted texts at least weekly." (Source: http://www.pewinternet.org/2012/08/02/mobile-phone-problems.
[14] FCC Order, para. 29
[15] *Id.*
[16] *Id.*

26. Plaintiff is, and at all times herein was, the subscriber of his cellular telephone number ending in 8649. (the "Number").

27. The Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

28. On or about Saturday August, 12, 2017 was involved in a motor vehicle accident in Lakewood, Ohio. Plaintiff received the following text messages at the Number on Monday, August 14, 2017:

" 1-800-HURT-NOW

ADVERTISEMENT ONLY:

We're sorry to have learned, through a police report, about your recent car accident. Our attorneys at Kisling, Nestico & Redick would like to advise you of your legal rights. Please call us at 1-800-HURT-NOW before you speak to an insurance adjuster so we can help you. WE HAVE A NO FEE GUARANTEE, WHICH MEANS WE DON'T GET PAID UNLESS YOU DO. Please call us at 1-800-487-8669 for a FREE consultation.

Reply HELP LEGAL for more information, STOP LEGAL to cancel. Message & Data rates may apply.

Understanding Your Rights*

If you have been in an accident, or a family member has been injured or killed in a crash or some other incident, you have many important decisions to make. We believe it is important for you to consider the following:

I. Make and keep records - If your situation involves a motor vehicle crash, regardless of who may be at fault, it is helpful to obtain a copy of the police report, learn the identity of any witnesses, and obtain photographs of the scene, vehicles, and any visible injuries. Keep copies of receipts of all your expenses and medical care related to the incident.

2. You do not have to sign anything- You may not want to give an interview or recorded statement without first consulting with an attorney, because the statement can be used against you. If you may be at fault or have been charged with a traffic or other offense, it may be advisable to consult an attorney right away. However, if you have insurance, your insurance policy probably requires you to cooperate with your insurance company and to provide a statement to the company. If you fail to cooperate with your insurance company, it may void your coverage.

3. Your interests versus interests of insurance company - Your interests and those of the other person's insurance company are in conflict. Your interests may also be in conflict with your own insurance company. Even if you are not sure who is at fault, you should contact your own insurance company and advise the company of the incident to protect your insurance coverage.

4. There is a time limit to file an insurance claim - Legal rights including filing a lawsuit, are subject to time limits. You should ask what time limits apply to your claim. You may need to act immediately to protect your rights.

5. Get it in writing - You may want to request that any offer of settlement from anyone be put in writing, including a written explanation of the type of damages which they are willing to cover.

6. Legal assistance may be appropriate - You may consult with an attorney before you sign any document or release of claims. A release may cut off all future rights against others, obligate you to repay past medical bills or disability benefits, or jeopardize future benefits. If your interests conflict with your own insurance company, you always have the right to discuss the matter with an attorney of your choice, which may be at your own expense.

7. How to find an attorney - If you need professional advice about a legal problem but do not know an attorney, you may wish to check with relatives, friends, neighbors, your employer or co-workers who may be able to recommend an attorney. Your local bar association may have a lawyer referral service that can be found in the Yellow Pages.

8. Check a lawyer's qualifications - Before hiring any lawyer, you have the right to know the lawyer's background, training, and experience in dealing with cases similar to yours.

9. How much will it cost? - In deciding whether to hire a particular lawyer, you should discuss, and the lawyer's written fee agreement should reflect:

a. How is the-lawyer to be paid? If you already have a settlement offer, how will that affect a contingent fee arrangement?

b. How are the expenses involved in your case, such as telephone calls, deposition costs, and fees for expert witnesses, to be paid? Will these costs be advanced by the lawyer or charged to you as they are incurred? Since you may be obligated to pay all expenses even if you lose your case, how will payment be arranged?

c. Who will handle your case? If the case goes to trial, who will be the trial attorney?

This information is not intended as a complete description of your legal rights, but as a checklist of some of the important issues you should consider.

*THE SUPREME COURT OF OHIO, WHICH GOVERNS THE CONDUCT OF LAWYERS IN THE STATE OF OHIO, NEITHER PROMOTES NOR PROHIBITS THE DIRECT SOLICITATION OF PERSONAL INJURY VICTIMS. THE COURT DOES REQUIRE THAT, IF SUCH A SOLICITATION IS MADE, IT MUST INCLUDE THE ABOVE DISCLOSURE.

ADVERTISEMENT ONLY

29. The text message was sent by KNR and/or by Wire2air on KNR's behalf and acting as KNR's agent to recruit and solicit Plaintiff to become a client of KNR for his personal injury action after being involved in an automobile accident.

30. Plaintiff did not expressly consent to receive any text message(s) from Defendants.

31. Plaintiff did not give either Defendant his prior express written consent to send telemarketing communications to his wireless phone.

32. Defendants never clearly and conspicuously disclosed to Plaintiff that he had consented to receive automated text calls/messages from Defendants – because he never so consented.

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings this action on behalf of himself and all other similarly situated members of a proposed class ("Class") initially defined, but subject to later modification throughout the course of discovery, as:

> **All persons in the State of Ohio who received one or more text messages inviting them to sign up with KNR for legal services.**

34. Plaintiff does not yet know the extent or scope of Defendants' text message advertising campaign and reserves the right to change the proposed class definition or to propose subclasses during this litigation. Excluded from the Class are Defendants' employees, officers, directors, members; legal representatives, successors, and assigns; any entity in which Defendant has a controlling interest; any Judge to whom the litigation is assigned; all members of the Judge's family; and all persons who timely and validly request exclusion from the Class.

35. This action has been brought as a class action, and may be properly maintained, pursuant to Federal Rule of Civil Procedure 23 and case law thereunder.

**Ascertainability**

36. Ascertainability under Federal Rule of Civil Procedure 23 "is implicit rather than explicit in Rule 23."[17] The identity of individual class members is not required. It is only necessary that the class be ascertainable. Here, the precise number of Class Members and their identities and addresses are presently unknown to Plaintiff; however, such number, and the identity and address of each class member, can be readily ascertained through the Defendants' business and advertising records and data and/or via mass advertisement. Class Members may be notified of the pendency of this action by direct mail via Defendants' business records mail and/or electronic mail and/or other electronic and social media means, by identifying current consumers who have been sent unlawful text messages under the TCPA, and by notifying past Class Members to identify themselves in order to participate by way of affidavit or otherwise, supplemented (if deemed necessary or appropriate by the Court) by published notice. Plaintiff reserves his right to modify the definition of the proposed class based on information he and his counsel learn throughout the course of discovery.

**Numerosity**

37. The members of the Class are so numerous that individual joinder of Class Members is impractical. Upon information and belief, Defendants' conduct consisted of a widely distributed text message campaign sent to particular telephone numbers. Plaintiff believes, at a minimum, there are hundreds, if not thousands, of Class Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the

---

[17] *In re Polyurethan Foam Antitrust Litig.*, 2015 U.S. Dist. LEXIS 94785 | 2015-2 Trade Cas. (CCH) P79, 238.

Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

## **Commonality**

38. This action involves multiple common questions of law and fact, which predominate over any questions affecting individual Class Members. The Common questions of law and fact exist as to all members of the Class. They include, without limitation:

(a) Whether Defendants violated the TCPA by sending unauthorized text messages to Plaintiff and other members of the Class;

(b) Whether the equipment Defendants used to send the text messages in question was an automatic telephone dialing system as defined by the TCPA and the FCC;

(c) Whether Defendants acquired the Class Members' cell phone numbers in a written agreement, bearing the signature of the person called;

(d) Whether the means by which Defendants acquired the Class Members' cell phone numbers clearly and conspicuously informed them that they may receive advertisements or telemarketing messages by means of an automatic telephone dialing system;

(e) Whether the means by which Defendants acquired the Class Members' cell phone numbers clearly and conspicuously informed them that they were not required to sign or enter into the agreement as a condition of purchasing any property, goods, or services;

(f) Whether Plaintiff and the other Class Members are entitled to statutory damages under the TCPA;

(g) Whether Defendants' actions were knowing or willful and, if so, whether the Court should treble the statutory damages awarded to Plaintiff and the other members of the Class; and

(h)	Whether Plaintiff and other members of the Class are entitled to equitable relief, including but not limited to injunctive relief.

### Typicality

39.	Plaintiffs' claims are typical of the claims of the Class. The claims of Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

40.	Plaintiff and Class Members each received at least one text message advertisement, advertising KNR's legal services, the commercial availability or quality of any property, goods, or services, without prior express written consent, which Defendant sent or caused to be sent to Plaintiff and members of the Class.

### Adequate Representation

41.	Plaintiff is an adequate class representative because his interests do not conflict with the interest of the Class and he has retained counsel competent and experienced in complex class action litigation. Therefore, the interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

### Superiority

42.	A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by Class Members are likely to exceed millions of dollars. However, the damages suffered by each individual Class Member are small in comparison to the burden and expense of individual prosecution. Without the class action device, it would be virtually impossible for Class Members individually to obtain effective redress for the wrongs done to them. It is desirable to concentrate the litigation of the claims in this Court. Even

if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Plaintiff and his counsel do not anticipate encountering any unique difficulties in the management of this action as a Class action.

### Injunctive Relief

43. Separate and distinct from the damages caused by Defendant's unlawful conduct, final injunctive and declaratory class-wide relief is also appropriate because Defendant has acted or refused to act on grounds generally applicable to the class.

### CAUSES OF ACTION

### COUNT ONE
**(Violation of the Telephone Consumer Protection Act)**
**(Violation of 47 U.S.C. § 227 et seq.)**

44. Plaintiff incorporates by reference all of the foregoing allegations as if fully rewritten herein.

45. The TCPA provides in pertinent part as follows:

(b) Restrictions on the use of automated telephone equipment

(1) Prohibitions

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –

(A) To make any call (other than a call for emergency purposes or made with the prior express written consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call …

47 U.S.C. § 227(b)(1)(A)(iii).

46. The FCC regulations provide in pertinent part:

(a) No person or entity may:

(2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party.

47 .F.R. § 64.1200

47. Defendants' text messages to Plaintiff and the other Class members included or introduced an advertisement or constituted telemarketing.

48. The TCPA defines "telemarketing call," or "telephone solicitation," as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of … goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4).

49. The TCPA defines an automatic "telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

50. Pursuant to the FCC Order, Defendants cannot escape TCPA liability even if they assert they previously had Plaintiff's and other Class Members' telephone numbers. The FCC in the FCC Order stated that, "Callers cannot avoid obtaining consumer consent for a robocall simply because they are not "currently" or "presently" dialing random or sequential phone numbers." FCC Order, para. 2.

51. The FCC went further and stated that, "We reaffirm our previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for that purpose, including when the caller is calling a set list of consumers." FCC Order, para. 10.

52. Before sending a text message, the sender must obtain "prior express consent" from the called party. "Prior express consent" must:

- Be in the form of an agreement in writing, bearing the written or electronic signature of the person providing consent;
- Specify the telephone number to which the person is consenting to be called;
- Clearly and conspicuously authorize the company to call the person using an auto-dialer system or prerecorded message for telemarketing purposes; and
- Clearly and conspicuously disclose that consent is not a condition of purchasing goods or services.

47 C.F.R. § 64.1200(f)(8)

53. At issue here, Defendants made telephone solicitations, including but not limited to the text message recited above, to the cell phone numbers of Plaintiff and other members of the Class without the required consent/authorization. Plaintiff's allegations are not limited to text

17

messages he received as he does not yet know the scope and extent of KNR's advertising campaign.

54. Defendants sent unsolicited commercial/consumer text calls to Plaintiff and other members of the Class using an automated telephone dialing system, as defined under the TCPA and the FCC.

55. Defendants sent these text calls without first obtaining the called parties' prior express, written consent.

56. Defendants knew or should have known they lacked prior express, written consent to send these text calls.

57. Defendants sent these text calls without first clearly and conspicuously disclosing that the called parties were providing or would provide consent to receive calls using an automatic telephone dialing system or an artificial prerecorded voice.

58. Defendants violated the TCPA by sending the text calls to Plaintiff and the other members of the Class without first obtaining their prior, written consent.

59. Defendants violated the TCPA by not providing the required clear and conspicuous disclosures to Plaintiff and other members of the Class.

60. Defendants harmed consumers by sending these text messages, not only because consumers were subjected to the aggravation that accompanies unsolicited wireless/cellular spam, but also because many consumers pay to receive text messages.

61. The text messages sent to Plaintiff and the other members of the Class were sent using equipment that had the capacity to store telephone numbers retrieved from KNR's database and to dial such numbers. The equipment can also be modified or programmed to generate and dial random or sequential numbers. By using such equipment, Defendants were able to send text

messages simultaneously to hundreds, if not thousands, of cell phone numbers *en masse* without human intervention.

62. Defendants' text calls were made through the use of a short code dialing service and without the prior express written consent of Plaintiff and the other members of the Class without first providing the required disclosures.

63. Defendants' conduct in sending such text messages violates 47 U.S.C. § 227(b)(1)(A)(iii).

64. Defendants' conduct in sending these text messages was a knowing and willful violation of 47 U.S.C. § 227.

65. As a result of Defendants' violation(s), the members of the Class suffered actual damages by, *inter alia,* having to pay their respective cellular/wireless carriers for the text messages where applicable and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia,* a minimum of $500 in statutory damages for each violation of the TCPA, and up to $1,500.00 for each if the Court determines that Defendants' violations of the TCPA were knowing or willful.

66. The Court should enjoin Defendants from sending future text messages without the written consent of the called party.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff requests of this Court the following relief, on behalf of himself and all others similarly situated against Defendant:

A. An Order certifying the proposed Class herein pursuant to Rule 23(b)(1), (2) and (3) of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel of record to represent the Class;

B. An award to Plaintiff and members of the Class of statutory damages pursuant to 47 U.S.C. § 227(b), for Defendants' violations of that statute;

C. If it is found that Defendant willfully and/or knowingly sent or caused to be sent text messages to the Class in violation of the TCPA, an increase by the Court of the award of

statutory damages pursuant to 47 U.S.C. § 227(b) prayed for to three times the amount described in the previous paragraph, as authorized by 47 U.S.C. § 227(b)(3), for willful and/or knowing violations.

      D.      An injunction against Defendants, prohibiting Defendants from committing further violations of the TCPA and the regulations promulgated thereunder;

      E.      Punitive damages;

      F.      Prejudgment interest;

      G.      Attorney's fees, costs of suit, including expert witness fees; and

      H.      Such other and further legal and equitable relief, including exemplary damages, as this Court may deem proper.

Respectfully submitted,

/s/ Thomas J. Connick
Thomas J. Connick (0070527)
Gary A. Vick, Jr. (0071495)
CONNICK LAW, LLC
25550 Chagrin Blvd., Suite 101
Beachwood, Ohio 44122
PH: (216) 364-0512 – FX: (216) 609-3446
tconnick@connicklawllc.com
gavickjr@connicklawllc.com

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff and the class hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38.

/s/ Thomas J. Connick
Thomas J. Connick (0070527)