UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FRANK LORD, | ) CASE NO. 1:17-cv-01739-DCN |
| Plaintiff, | ) JUDGE DONALD C. NUGENT |
| v. | ) |
| KISLING, NESTICO & REDICK, LLC, ET AL., | ) **DEFENDANT KISLING, NESTICO & REDICK, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY PROCEEDINGS** |
| Defendants. | ) |

**I.      INTRODUCTION**

On August 18, 2017, Plaintiff Frank Lord filed his Class Action Complaint (Doc. 1) (the "Complaint") seeking damages and an injunction under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") against Defendants Kisling, Nestico & Redick, LLC ("KNR") and Wire2Air Mobile Solutions. Plaintiff alleges that Defendants sent a single unsolicited telemarketing text message, without Plaintiff's prior express consent, to Plaintiff's cell phone using an "automatic telephone dialing system" ("ATDS") under the TCPA. (Doc. 1, ¶ 49.) Plaintiff seeks to represent a putative class of similarly situated individuals in the state of Ohio.

Critical to the success of Plaintiff's TCPA claim is establishing, as an element of his case, that KNR sent the text message "using" an ATDS. This exact same issue—which would result in a complete finding of no liability if decided in KNR's favor—is the subject of the appeal pending before the D.C. Circuit in *ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir.) ("*ACA Int'l*"). Specifically, in *ACA Int'l*, the D.C. Circuit is reviewing a two-to-three decision of the Federal Communications Commission ("FCC") to determine whether equipment constitutes an ATDS if it merely has the potential (as opposed to present) capacity to generate random telephone numbers to be dialed.

Given that *ACA Int'l* could be outcome-determinative in this litigation, the Court should stay this lawsuit pending the outcome of *ACA Int'l*—as numerous other courts throughout this Circuit and the country have done. Every single factor considered by courts in the Sixth Circuit in deciding whether to stay a case weigh heavily in favor of granting KNR's instant motion.

*First*, a stay will cause no harm whatsoever to Plaintiff. In fact, a stay pending the outcome of *ACA Int'l* would actually benefit Plaintiff by protecting him from incurring significant time and expense in classwide discovery and motion practice, all of which may end up being for naught following a ruling in *ACA Int'l*.

*Second*, if this action is not stayed, KNR would be severely prejudiced. Specifically, the Sixth Circuit (amongst other courts) has held that the Circuit Court to which an appeal from the FCC is taken—here, the D.C. Circuit—has exclusive jurisdiction to review a ruling of the FCC under the Administrative Procedures Act, 47 U.S.C. § 402(a) ("Hobbs Act"). Thus, if KNR is not permitted to await a ruling in *ACA Int'l*, KNR could be altogether prohibited from litigating its defenses, leading to a significant deprivation of its due process rights. Similarly, if forced to litigate this case during the pendency *of ACA Int'l*, KNR will have to incur significant defense costs, including during classwide discovery and expert fees related to Plaintiff's claim that KNR used an ATDS, that may end up being entirely unnecessary.

*Third*, a stay would promote judicial efficiency because a ruling in *ACA Int'l* will determine whether and to what extent Plaintiff's claims against KNR can proceed, and could potentially lead to immediate dismissal or immediate settlement. If forced to proceed without the clarity of the D.C. Circuit's ruling, on the other hand, the parties will have to engage in (and the Court will be forced to referee and decide) significant discovery and motion practice, which may be rendered moot by the decision in *ACA Int'l*.

For these reasons and the others discussed herein, the majority of district courts that have considered the issue have granted stays in similar TCPA cases. KNR respectfully requests that this Court do the same here and stay this case pending the decision in *ACA Int'l*.

## II. FACTS

### A. PLAINTIFF'S CLAIMS.

Plaintiff brings a putative class action alleging violations of Section 227(b)(1)(A)(iii) of the TCPA. (Compl. ¶¶ 1, 45.) Plaintiff contends that he is one of many recipients who received "illegal unauthorized text messages from Defendants promoting their legal services." (*Id*. at ¶ 3.) Specifically, Plaintiff contends that KNR obtains cellular telephone numbers of persons involved in a motor vehicle accident from police reports, inputs those telephone numbers into an autodialing program developed by Defendant Wire2Air, and sends out text advertisements. (*Id*. at ¶ 18.)

Plaintiff alleges that the single text message he received on August 14, 2017 was sent using an ATDS in violation of the TCPA. (*Id*. at ¶ 28.)

Section 227(b)(1)(A)(iii) of the TCPA provides that it shall be unlawful for any person:

> (A) to make any call (other than a call made … with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … (iii) to any telephone number assigned to a … cellular telephone service…..

47 U.S.C. § 227(b)(1)(A)(iii). The TCPA does not state a blanket prohibition against calling or texting cellular telephones. Rather, the TCPA only prohibits calls or texts to cellular telephones when the call or text is (1) made with an ATDS; or (in the case of a telephone call only) (2) uses an artificial or prerecorded voice. This is true *even if* no prior express consent exists for the call or text message. Here, Plaintiff does not allege that any artificial/prerecorded voice was used—nor could he, as the Complaint alleges only text messages, not telephone calls. Thus, the success

of Plaintiff's TCPA claim will require resolution of the dispositive issue of whether the single text message KNR sent to Plaintiff's cellular telephone was made using an ATDS.

### B. THE DEFINITION OF AN ATDS WILL BE DETERMINED BY THE APPEAL IN *ACA INT'L*.

An ATDS is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The statutory definition of an ATDS

> reflects that, when the statute was enacted in 1992, telemarketers typically used autodialing equipment that either called numbers in large sequential blocks or dialed random 10-digit strings. Thus, the FCC initially interpreted the statute as specifically targeting equipment that placed a high volume of calls by randomly or sequentially generating the numbers to be dialed.

*Dominguez v. Yahoo, Inc.*, 629 Fed. Appx. 369, 372 (3d Cir. 2015).

In contrast to the massive volume of calls that an ATDS could initiate (sometimes referred to as "robodialing"), dialing equipment was not considered an ATDS when a telephone user initiated a call to a specific telephone number, whether manually entered or through the use of functions like speed dialing, "because the numbers called are not generated in a random or sequential fashion." *See In re Rules and Regulations Implementing the TCPA of 1991* ("*In re TCPA*"), 7 FCC Rcd. 8752, ¶ 47 (1992).

On July 10, 2015, the FCC issued a Declaratory Ruling and Order regarding, *inter alia*, the definition and interpretation of what type of dialing equipment constitutes an ATDS under the TCPA. *See In re TCPA*, 30 F.C.C.R. 7961 (2015) (the "2015 Order"). The 2015 Order dramatically altered the scope of the statutory definition of an ATDS and held that the "capacity" of an ATDS is not limited to what the equipment is capable of doing in its current configuration, but "also includes its potential functionalities." *Id.* at ¶ 16. That is, the 2015 Order held that the "capacity" of an ATDS includes what dialing equipment could do if modified, so long as those

possible modifications are not too "theoretical" or "attenuated." *Id.* at ¶ 18. In doing so, the FCC created a new fact-intensive inquiry into whether equipment has the "potential" to function as an ATDS, but it provided little guidance to callers, or courts, on how to make such a determination. The FCC noted in its 2015 Order that its interpretation applied equally to text messages. *Id*. at ¶¶ 23-24 ("We conclude that such equipment [to send text messages] can be deemed an autodialer if the net result of such voluntary combination enables the equipment to have the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.").

Numerous affected parties appealed the 2015 Order to various Circuit Courts of Appeal, and these appeals were subsequently consolidated into *ACA Int'l* before the D.C. Circuit. As one district court in this Circuit explained in granting a similar motion to stay a TCPA claim pending the outcome of *ACA Int'l*:

> ACA International and other parties have petitioned the D.C. Circuit to review the July 2015 Ruling, raising as issues the definition of autodialer as including equipment that merely has the capacity to autodial . . . the FCC was "sharply divided" on many of the pertinent issues, ***especially the proper definition of autodialer***. [I]n light of the close divide amongst the FCC commissioners and the fact that at least one commissioner believes the FCC's ruling is flatly inconsistent with the TCPA, there is a legitimate possibility that the Court of Appeals may overturn that ruling. Accordingly, the proper interpretation of the TCPA remains unclear.

*Jones v. Credit Acceptance Corp.*, No. CV 15-13165, 2016 WL 7320919, *1-2 (E.D. Mich. Oct. 31, 2016), *report and recommendation adopted*, No. 15-13165, 2016 WL 7242141 (E.D. Mich. Dec. 15, 2016) (emphasis added) (internal quotation marks and citation omitted); *see also Ankcorn v. Kohl's Corp.*, No. 15-CV-1303, 2017 WL 395707, *3 (N.D. Ill. Jan. 30, 2017) ("[T]he Court notes that numerous courts around the country have granted similar motions to stay in TCPA cases while the D.C. Circuit case is pending.") (collecting authorities).

5

The outcome of *ACA Int'l* will resolve, one way or the other, the appropriate legal standard for determining whether dialing equipment constitutes an ATDS. KNR contends that it is not liable under the TCPA because it does not use an ATDS, as Plaintiff alleges, because KNR's system does not have the capacity to dial random or sequential telephone numbers. Indeed, Plaintiff does not allege that a text message sent out indiscriminately to the public— Plaintiff alleges that he is the recipient of a single message that KNR sent *specifically to him* after he was in an automobile accident. Whether KNR's system constitutes an ATDS is a dispositive issue of Plaintiff's TCPA claim and that of the putative class. Further, given that discovery has not yet commenced, awaiting resolution of the appropriate legal standard will significantly shape the proper scope of fact and expert discovery.

### III. LAW AND ARGUMENT

#### A. STANDARD FOR GRANTING A STAY.

A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997), *citing Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Courts typically weigh three factors in determining whether to stay an action: (1) any prejudice to the non-moving party if a stay is granted, (2) any prejudice to the moving party if a stay is not granted, and (3) the extent to which judicial economy would be served by the entry of a stay. *Zehentbauer Family Land LP v. Chesapeake Expl., LLC*, No. 4:15CV2449, 2016 WL 3902893, *2 (N.D. Ohio July 19, 2016); *Maksymowski v. Navient Sols., Inc.*, No. 15-14368, 2017 WL 486941, *1 (E.D. Mich. Jan. 12, 2017) (granting stay in response to *ACA Int'l* and further considering "the potentiality of another case having a dispositive effect on the case to be stayed.") (citation omitted). Here, all of these factors weigh in favor of granting a stay.

6

### B. A STAY POSES NO RISK OF PREJUDICE TO PLAINTIFF.

First, a stay poses no risk of prejudice to Plaintiff. Although a stay would delay the case, numerous courts have found minimal danger of prejudice to the plaintiffs from any delay in the forthcoming *ACA Int'l* decision. *Jones*, 2016 WL 7320919 *3 ("Nor has Jones demonstrated prejudice . . . there is no tactical advantage to conducting discovery and preparing for trial when the TCPA standards are uncertain."); *Rose v. Wells Fargo Advisors, LLC*, No. 1:16-CV-562-CAP, 2016 WL 3369283, *2 (N.D. Ga. June 14, 2016) ("[T]he appeal before the D.C. Circuit is not likely to remain pending for an extended period of time, and the possible prejudice to the plaintiff is minimal."); *Ricketts v. Consumers Energy Co.*, No. 16-CV-13208, 2017 WL 2351731, *2 (E.D. Mich. May 31, 2017) (staying TCPA class action pending ruling in *ACA Int'l* because plaintiff "has not identified any real hardship, burden, or prejudice that would result to her from a stay.").

This is particularly true given that oral argument in *ACA Int'l* was scheduled and held on October 19, 2016. *See ACA Int'l*, No. 15-1211, Document No. 1641668 (D.C. Cir. October 19, 2016). Any stay would be relatively brief given that the matter is fully briefed and under submission before the D.C. Circuit. *See Maksymowski*, 2017 WL 486941 at *1 ("Plaintiffs have not articulated any concrete prejudice they might suffer if these proceedings were stayed at this stage. Moreover, given that the D.C. Circuit heard oral argument in October 2016, the court anticipates that a stay would be relatively brief, ameliorating any prejudice to Plaintiff."); *Garvey v. Fortegra Fin. Corp.*, No. 16 CV 11210, 2017 WL 3669036, at *2 (N.D. Ill. Aug. 14, 2017) (staying putative TCPA class action pending a ruling in *ACA Int'l* and noting that "[g]iven the date of the oral arguments, the Court agrees with Defendants that a stay pending D.C. Circuit decision is unlikely to be unreasonably long."); *Robinson v. Nationstar Mortg., LLC*, 220 F. Supp. 3d 1353, 1355 (S.D. Ga. 2016) ("[T]he delay in this case will likely be minimal given that

Plaintiff's case is still in its infancy and the D.C. Circuit has already held oral arguments in *ACA Int'l*.").

Therefore, the first relevant factor weighs heavily in favor of a stay—even more so than it did in prior cases where courts granted similar stays, as *ACA Int'l* is fully briefed, oral argument concluded in October 2016, and a decision is now imminent.

## C. KNR WILL SUFFER SUBSTANTIAL PREJUDICE IF THIS ACTION PROCEEDS BEFORE *ACA INT'L* IS DECIDED.

Second, KNR would be substantially prejudiced if forced to proceed before *ACA Int'l* is decided because it will be required to expend significant defense costs and engage in costly class-related discovery that will end up being entirely unnecessary. This factor can be established by showing that a failure to stay the case will force the defendant to participate in a potentially unnecessary proceeding, and, thereby, incur unnecessary expenses. *See Schartel v. OneSource Tech., LLC*, No. 1:15 CV 1434, 2015 WL 7430056, at *2 (N.D. Ohio Nov. 17, 2015) (staying TCPA class action and noting that "all parties face the risk of unnecessary proceedings and expenses if the case is not stayed.").

If the D.C. Circuit in *ACA Int'l* agrees with the two dissenting FCC Commissioners in holding that the definition of ATDS should be limited to equipment with only the present capacity to generate random or sequential telephone numbers—as the statute provides—KNR will have a complete defense to Plaintiff's single TCPA claim. Thus, as numerous other district courts have concluded, "[i]f the case is not stayed, Defendant must conduct discovery and trial preparation without any certainty regarding the difference between 'potential' and 'theoretical' capacity under the definition of an ATDS." *Robinson*, 220 F. Supp. 3d at 1355; *Ricketts*, 2017 WL 2351731 at *2 (noting that *ACA Int'l* "will resolve whether equipment must have a present capacity to both produce (or store) and dial numbers, or the potential capacity to do so. The

8

difference between these definitions equates to a difference in tens of thousands of dollars in expert fees related to the issue of whether equipment might have the potential or future capacity to produce (or store) and dial numbers.").

### D. A STAY WILL PROMOTE JUDICIAL ECONOMY AND EFFICIENCY BY SIMPLIFYING THIS CASE AND AVOIDING JURISDICTIONAL ISSUES UNDER THE HOBBS ACT.

Third, the interests of the public and specifically the Court (*i.e.*, judicial economy) also strongly militate in favor of a stay. This factor can be satisfied where there is a strong potential for another case having a dispositive effect on the case to be stayed. *Maksymowski*, 2017 WL 486941 at *1, *citing Michael v. Ghee*, 325 F. Supp. 2d 829, 831 (N.D. Ohio 2004) ("Important to the Court's propriety analysis was a weighing of the potentiality of another case having a dispositive effect on the case to be stayed . . . .").

As noted above, the 2015 Order created an "uncertain difference between 'potential' and 'theoretical' capacity under the definition of an ATDS."[1] *Rajput v. Synchrony Bank*, No. 3:15-CV-1079, 2016 WL 6433134, *4 (M.D. Pa. Oct. 31, 2016) (citation omitted). As stated by at least one district court:

> Whether Defendants used an ATDS when making telephone calls to Plaintiff is a threshold issue for liability under the TCPA and for the scope of discovery. Thus, a stay pending ACA International would help clarify and streamline the legal issue concerning the definition of ATDS. Moreover, awaiting a decision from the D.C. Circuit in ACA International would also focus discovery concerning Defendant's alleged ATDS for both parties. Furthermore, as noted, if a stay in this action is not entered the Court would be leaving the door open for the possibility that during the course of discovery, drafting of motions, or while dispositive motions are pending the D.C. Circuit issue its decision in ACA International that would then require additional discovery or renewed motions. Finally, granting a

---

[1] Even if the 2015 Order is upheld, KNR contends that it will successfully defeat Plaintiff's claim under a "potential" capacity analysis. However, the point of KNR's Motion is that in light of *ACA Int'l* and following the logic of numerous other district courts, the parties should not be required to engage in costly discovery under an uncertain legal framework. This is particularly the case when, as numerous courts have observed, the potential capacity standard in the 2015 Order will "more likely" be overturned since the FCC's interpretation appears to "contradict[] the plain language of the statute." *Gensel v. Performant Techs., Inc.*, No. 13-C-1196, 2015 WL 6158072, at *2 (E.D. Wis. Oct. 20, 2015).

9

> stay will reduce the burden of litigation on the parties and the Court by allowing the Court to avoid issuing a dispositive Order in the midst of an uncertain legal environment.

*Id.* at *7 (internal quotation marks and citations omitted). Simply put, awaiting the outcome of *ACA Int'l* will significantly narrow and simplify the issues in this case. A decision in *ACA Int'l* will undisputedly resolve a dispositive issue in this case and will vitiate the potential for wasted resources "in the midst of an uncertain legal environment." *Id.* (citation omitted).

Moreover, under the Hobbs Act, the appeal in *ACA Int'l* is a direct appeal from the FCC, and only the D.C. Circuit has the authority to enjoin, set aside, annul or suspend the 2015 Order in whole or in part. *See* 47 U.S.C. § 402(b), (h); 28 U.S.C § 2342(1). As such, if the D.C. Circuit vacates or modifies the 2015 Order, including its holding with respect to the definition of an ATDS, that decision will be binding on this Court under the Hobbs Act. *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 467 (6th Cir. 2017), *as corrected on denial of reh'g en banc* (Sept. 1, 2017) (noting that under the Hobbs Act, once petitions were assigned to the D.C. Circuit on another TCPA issue, "that court became 'the sole forum for addressing . . . the validity of the FCC's rule[.]") (citation omitted). Thus, any decision by the D.C. Circuit in *ACA Int'l* "striking down" the 2015 Order or any portion thereof will become "binding outside of the [D.C. Circuit] . . . This result makes sense in light of the procedural mechanism Congress has provided for challenging agency rules." *Id.*

Thus, because "[a] stay pending the D.C. Circuit's decision will serve to conserve the resources of the parties and the court while avoiding the wasted effort that may be involved in proceeding under an uncertain legal framework," and because the issues to be decided in *ACA Int'l* will be dispositive in this case, the Court should stay these proceedings pending the D.C. Circuit's imminent ruling in *ACA Int'l*. *Maksymowski*, 2017 WL 486941 at *1.

**IV.     CONCLUSION**

Many courts "have considered whether to stay TCPA actions pending the outcome of *ACA International*, with the majority deciding to issue a stay." *Reynolds v. Geico Corp.*, No. 2:16-CV-01940-SU, 2017 WL 815238, at *3 (D. Or. Mar. 1, 2017). This Court should join that majority, and grant KNR's Motion to Stay in this case.

                                                Respectfully submitted,

                                                *s/ David M. Krueger*
                                                DAVID M. KRUEGER (0085072)
                                                ANTHONY C. SALLAH (0092603)
                                                Benesch, Friedlander, Coplan & Aronoff LLP
                                                200 Public Square, Suite 2300
                                                Cleveland, Ohio 44114
                                                T: 216-363-4178 F: 216-363-4588
                                                dkrueger@beneschlaw.com
                                                asallah@beneschlaw.com
                                                *Attorneys for Defendant Kisling, Nestico & Redick, LLC*

**CERTIFICATE OF SERVICE**

This is to certify that the foregoing *Defendant Kisling, Nestico & Redick, LLC's Memorandum in Support of its Motion to Stay Proceedings* was filed electronically on November 13, 2017 in accordance with the Court's Electronic Filing Guidelines.  Notice of this filing will be sent to all properly registered parties by operation of the Court's electronic case filing system.

 *s/ David M. Krueger*
*One of the Attorneys for Defendant Kisling, Nestico & Redick, LLC*

10577008 v2