**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| FRANK LORD<br>21183 Aberdeen Rd.<br>Rocky River, Ohio 44116 | ) CASE NO: 1:17-cv-1739<br>)<br>) JUDGE: DONALD C. NUGENT<br>) |
| And | )<br>) |
| STEVEN M. KATZ<br>82-1/2 Wootring Street<br>Delaware, Ohio 43015 | )<br>)<br>) **PLAINTIFFS' FIRST AMENDED CLASS** |
| On behalf of themselves and all those<br>similarly situated | ) **ACTION COMPLAINT**<br>)<br>) (Jury Demand Endorsed Hereon)<br>) |
| Plaintiffs,<br>v. | )<br>)<br>) |
| KISLING, NESTICO & REDICK, LLC<br>4490 Litchfield Drive<br>Copley, Ohio 44321 | )<br>)<br>)<br>) |
| And | )<br>) |
| WIRE2AIR MOBILE SOLUTIONS<br>228 Park Avenue S<br>New York, NY 10003 | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

Plaintiffs, Frank Lord and Steven M Katz, bring this action on behalf of themselves and all

others similarly-situated, against Kisling, Nestico, & Redick, LLC ("KNR") and Wire2Air Mobile

Solutions ("Wire2Air")[1] (Hereinafter referred to collectively as "Defendants") for violations of the

Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"),[2] the Ohio Electronic Mail

Advertisements Act, O.R.C. § 2307.64 ("EMAA"), and the Ohio Consumer Sales Practices Act,

O.R.C. § 1345.09 ("OCSPA") (for declaratory and injunctive relief, only), and to recover statutory

---

[1] Plaintiffs' claim against Wire2Air is for Vicarious liability.
[2] The TCPA is codified at section 227 of the Communications Act of 1934, as amended.

damages and all other relief for all persons who received unsolicited and unauthorized electronic mail text messages from Defendants.  Plaintiffs' allegations are based upon information and belief and the investigation of counsel, except those pertaining to Plaintiffs' own actions, which are based on personal knowledge.

## INTRODUCTION

1.      Plaintiff Frank Lord ("Mr. Lord" or "Plaintiff") brings this putative class action against the Defendants to secure redress for their violations of the TCPA, EMAA, and the OCSPA.

2.      Plaintiff Steven M. Katz ("Mr. Katz" or "Plaintiff") brings this putative class action against Defendants to secure redress for their violations of the TCPA, EMAA, and the OCSPA.

3.      This case challenges Defendants' practices of unlawfully sending predictive and/or autodialed telemarketing electronic mail text messages to wireless/cellular telephones ("wireless phones") without prior express written consent and/or pre-existing business relationship as required by the TCPA and EMAA.

4.      This case also challenges Defendants' practices of unlawfully sending electronic mail advertisements via text messages to persons' cellular phones without having a pre-existing business relationship as required under the EMAA.

5.      Plaintiffs also seek declaratory judgment and injunctive relief in this matter, pursuant to Fed. Civ. R. Proc. 23(b)(2) and the OCSPA.

6.      Plaintiffs are two of many electronic mail text recipients, believed to number in the hundreds of thousands, who received illegal unauthorized electronic mail text messages from Defendants promoting, selling, advertising, and soliciting KNR's legal services immediately after a motor vehicle accident ("MVA").

7.      Plaintiffs bring this action to enforce the consumer privacy provisions of the TCPA and achieve redress and compensation for affected consumers. In a case such as this, where individual damages are set by statute at $500-$1,500 per violation, a class action is the best if not the only means of obtaining redress for the type of wide-scale, illegal electronic mail texting at issue, and is consistent both with the private right of action afforded by the TCPA, and the fairness and efficiency goals of Fed. R. Civ. Proc. 23.

8.      Plaintiffs also bring this action to enforce the consumer  protection provisions of the EMAA and achieve redress and compensation for affected persons and recipients of unsolicited and/or unwanted electronic mail via text messages. In a case such as this, where the individual damages are set by statute at $50-$100 per violation, a class action is the best if not the only means of obtaining redress for the type of wide-scale  illegal electronic mail text messaging at issue, and is consistent both with the private right of action afforded by the EMAA, and the fairness and efficiency goals of Fed. R. Civ. Proc. 23.

9.      Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Federal Communications Commission ("FCC").[3]  On July 10, 2015 the FCC issued its TCPA Omnibus Declaratory Ruling and Order which preserved consumers' rights to stop unwanted robocalls, including both voice calls and texts.[4]  In enacting the TCPA, Congress made clear that "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices."[5]

---

[3] TCPA Omnibus Declaratory Ruling and Order, CG Docket No. 02-278, Declaratory Ruling and Order, 30 FCC Rcd. 7961, ¶1 (2015) ("FCC Order").
[4] *Id.*
[5] *Id.*, at P2.

10.     Here, KNR transmitted, and/or, upon information and belief, directed Wire2Air to transmit, unauthorized telemarketing, electronic mail text messages, and/or informational material soliciting its legal services in the form of "text messages" to cell phones including or introducing an electronic mail advertisement or message for the purpose of encouraging the consumer to purchase unsolicited legal services from KNR in the form of representation in personal injury cases, immediately after a person was involved in an MVA.[6]

11.     Defendants did not have Plaintiffs' prior written consent or a pre-existing business relationship authorizing them to send autodialed and/or predictive electronic mail text messages, i.e. electronic messages to their wireless phones.  In fact, Defendants had no authorization at all from Plaintiffs.

12.     The TCPA grants consumers a private right of action, with provision for $500 per violation or the actual monetary loss in damages for each violation, whichever is greater, and the Court may increase those damages up to three times when it determines a violation was knowing or willful.[7]  On behalf of themselves and all others similarly-situated, Plaintiffs seek statutory damages for each violation of the TCPA by Defendants, and requests that the Court treble those damages.

13.     The EMAA grants persons and recipients of electronic messages a private cause of action, with provision for $50-100 for each violation. On behalf of themselves and all other similarly situated, Plaintiffs seek statutory damages for each violation of the EMAA by Defendants.

14.     On behalf of the Class, Plaintiffs also seek an injunction requiring Defendants to cease all unlawful electronic mail text messages, together with costs and reasonable attorney's fees as appropriate.

---

[6] 47 C.F.R. § 64.1200(a)
[7] 47 U.S.C. § 227(b)(3)

## PARTIES

15.      Plaintiff Lord is an Ohio resident, at all times pertinent hereto residing at 21183 Aberdeen Rd., Rocky River, Ohio, County of Cuyahoga.

16.      Plaintiff Katz is an Ohio resident, at all times residing at 82-1/2 Wootring Street, Delaware, Ohio, County of Delaware.

17.      KNR is an Ohio law firm predominantly focusing on personal injury plaintiff cases who aggressively advertise in the State of Ohio using a tag line, "Hurt in a car? Call KNR."

18.      Wire2Air is a New York company selling its services in Ohio.  Wire2Air offers a litany of services one of which is a program(s) for a business to build text message campaigns with Wire2Air's bulk text messaging tool.  Wire2Air offers a bulk text message program and web based application for a business to send and receive millions of text messages at one time.  Another part of Wire2Air's programs and services allows its business clients to send thousands of text messages easily from the client's computer.[8]

19.      Defendants KNR and Wire2Air contracted with each other for KNR to use one or more of Wire2Air's platforms to send in bulk and *en masse* electronic mail text messages.

20.      Defendants, directly or else through other persons acting on their behalf, conspired to, agreed to, contributed to, assisted with, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the text messages that are the subject matter of this Complaint.

## JURISDICTION

21.      Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the TCPA, a federal statute.

---

[8] http://www.wire2air.com/

22.     This Honorable Court also maintains supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

23.     This Court has personal jurisdiction over Defendants because they conduct business within the State of Ohio.

24.     Venue in this action is proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1391 because Defendants committed a statutory tort within this District and a significant portion of the events giving rise to Plaintiffs' claims took place here.

## BACKGROUND FACTS

25.     This case challenges Defendants' practices of sending autodialed[9] text messages,[10] and electronic messages[11] to wireless/cellular telephones ("wireless phones") without prior express written consent,[12] and/or pre-existing business relationship.

26.     Upon information and belief, KNR obtains the cell-phone numbers of persons recently involved in a MVA from police and crash reports throughout the State of Ohio, and then inputs those phone numbers into the autodialing program(s) developed by Defendant Wire2Wire and sends out unauthorized mass text and electronic mail advertisements to those phone numbers.

27.     Short Message Service ("SMS"), more commonly known as "text messaging," is a popular means for communicating among cell phone subscribers.

---

[9] The TCPA defines "automatic telephone dialing system" as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  See also the FCC Order for the FCC's very broad and expansive definition of "autodialer."  FCC Order, para. 10-24.

[10] "Calls" include text messages.  See *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, para. 165 (2003).  See also 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii).

[11] The EMAA defines "Electronic mail" as "an electronic message that is transmitted between two or more telecommunication devices or electronic devices capable of receiving electronic messages, whether or not the message is converted to hard copy format after receipt, and whether or not the message is viewed upon the transmission or stored for later retrieval. 'Electronic mail' includes electronic messages that are transmitted through a local, regional, or global network." O.R.C. § 2307.64(A)(3)

[12] 47 C.F.R. § 64.1200(a)(2), (f)(8)(i).

28.     Further, Defendant KNR has represented that it allegedly uses "Wire2Air MMS Send API" platform. "MMS" stands for "Multimedia Messaging Service."

29.     KNR has issued electronic mail text messages using short codes indicative of use of an ATDS, which thereafter provides a link to click on that opens the electronic mail text. This is issued through Defendant Wire2Air via "mzone.wire2air.com."

30.     For example, KNR issued an electronic mail text message to Plaintiff Katz using the short code 271-26.

31.     Under the Wire2Air MMS Send API platform KNR is provided a short code number provided by Defendant Wire2Air.[13]

32.     Defendant Wire2Air's MMS marketing via the above platform provides, among other things:

a.     An advanced way to send text messages beyond the 160-character length;

b.     Provides solutions to send single or mass MMS messages using Defendant Wire2Air's web-based software;

c.     The ability to launch Mass & Bulk MMS in seconds;

d.     The ability to convert a MMS message into a mobile link.[14]

33.     The platform that KNR acknowledges using has the capability and functionality to send single or mass MMS messages.

34.     The platform that KNR acknowledges using does have the capability and/or functionality to launch mass and bulk messages "in seconds."

---

[13] See Wire2Aire website page: http://www.wire2air.com/docs/http-api/mms-send-httpapi, attached hereto as Appendix 1.
[14] See Wire2Air website page: http://www.wire2air.com/mms-markeing, attached hereto as Appendix 2.

35.     The platform that KNR acknowledges using, uses and requires a short code which is used for bulk and mass texting, which indicates the use of an ATDS.

36.     The platform KNR acknowledges using allows electronic mail in excess of 160 characters to be transmitted via a link to the end cell phone user.

37.     As defined under the EMMA, "Electronic mail" is not confined to what may be ordinarily understood to be "E-Mails."  Instead, the EMMA defines "Electronic Mail" broadly (see footnote (10), to include electronic messages exchanged between two or more telecommunication devices. The EMMA applies to text messages and/or emails delivered as text messages.

38.     O.R.C. § 2913.01 defines "Telecommunication Device" as "any instrument, equipment, machine, or other device that facilitates telecommunication, including, but not limited to, a computer[15], computer network, computer chip, computer circuit, scanner, telephone, cellular telephone, pager, personal communications device, transponder, receiver, radio, modem, or device that enables the use of a modem."

39.     Businesses continually seek cost-effective ways to market their goods and services. The popularity of cell phones and electronic messages, such as, text messaging has created a marketing opportunity for businesses, but their telemarketing efforts are limited by restrictions on telephone, facsimile, and email solicitations.

40.     According to the FCC, "Month after month, unwanted ... texts, both telemarketing and informational, top the list of consumer complaints received by the Commission.  The [TCPA]

---

[15] Under 18 U.S.C.S. § 1030(e)(1), "computer" is defined as "means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device." Federal courts have held that personal cell phones are computers under this definition. See *United States v. Kramer*, 631 F.3d 900 | 2011 U.S. App. LEXIS 2367 | 58 A.L.R. Fed.2d 611; *United States v. Mathis*, 767 F.3d 1264, 1282 (11th Cir. 2014); *United States v. Rogers*, 599 Fed. Appx. 223 | 2015 U.S. App. LEXIS 6034 | 2015 WL 1637830.

and [FCC] rules empower consumers to decide which ... text messages they receive, with heightened protection to wireless consumers…."[16]

41.    The FCC has explained, "Calling and texting consumers *en masse* has never been easier or less expensive" in part, because skyrocketing growth of mobile phones, rising from approximately 140 million wireless subscriber connections in 2002 to approximately 326 million in 2012.[17]   Additionally, 39 percent of adults were wireless-only in the second half of 2013, compared to fewer than three percent of adults at the beginning of 2003."[18]

42.    The intent of Congress, when it established the TCPA in 1991, was to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed [text messages] calls generate.[19]   Congress found that banning such text messages, except when the party consents, "is the only effective means of protecting telephone consumers from this nuisance and privacy invasion."[20]   Congress therefore put the responsibility for compliance with the law directly on the party that "makes" or "initiates" autodialed and/or predictive text messages.[21]

43.    At issue here, Defendants transmitted electronic mail text messages to cell phone users – including Plaintiffs and the other members of the putative Class – to promote, solicit, advertise, and sell KNR's legal services – without Plaintiffs' and the putative Class Members' authorization, consent, or pre-existing business relationship.

44.    Plaintiff Lord is, and at all times herein was, the subscriber of his cellular telephone number ending in 8649.  (the " Lord Number").

---

[16] FCC Order, para. 1
[17] FCC Order, para. 7, n. 32
[18] According to a 2012 study by the Pew Research Center, 69% of cell phone users who use text messaging receive unwanted text message spam, and "[o]f those texters, 25% face problems with spam/unwanted texts at least weekly."  (Source: http://www.pewinternet.org/2012/08/02/mobile-phone-problems.
[19] FCC Order, para. 29
[20] *Id.*
[21] *Id.*

45.     Plaintiff Katz is, and all times herein was, the subscriber of his cellular telephone number ending in 8008. (the "Katz Number").

46.     The Numbers are, and at all times mentioned herein were, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

47.     On or about Saturday August 12, 2017 Plaintiff Lord was involved in a MVA in Lakewood, Ohio. Plaintiff Lord received the following text messages at the Lord Number on Monday, August 14, 2017. On or about November 16, 2017 Plaintiff Katz was also involved in an MVA in Delaware, Ohio. Approximately a week later, Plaintiff Katz filled out a police report. Shortly thereafter, Plaintiff Katz also received the following electronic mail text to the Katz Number:

" 1-800-HURT-NOW

ADVERTISEMENT ONLY:

We're sorry to have learned, through a police report, about your recent car accident. Our attorneys at Kisling, Nestico & Redick would like to advise you of your legal rights. Please call us at 1-800-HURT-NOW before you speak to an insurance adjuster so we can help you. WE HAVE A NO FEE GUARANTEE, WHICH MEANS WE DON'T GET PAID UNLESS YOU DO. Please call us at 1-800-487-8669 for a FREE consultation.


Reply HELP LEGAL for more information, STOP LEGAL to cancel. Message & Data rates may apply.


Understanding Your Rights*

If you have been in an accident, or a family member has been injured or killed in a crash or some other incident, you have many important decisions to make. We believe it is important for you to consider the following:

I. Make and keep records - If your situation involves a motor vehicle crash, regardless of who may be at fault, it is helpful to obtain a copy of the police report, learn the identity of any witnesses, and obtain photographs of the scene, vehicles, and any visible injuries. Keep copies of receipts of all your expenses and medical care related to the incident.

2. You do not have to sign anything- You may not want to give an interview or recorded statement without first consulting with an attorney, because the statement can be used against you. If you may be at fault or have been charged with a traffic or other offense, it may be advisable to consult an attorney right away. However, if you have insurance, your insurance policy probably requires you to cooperate with your insurance company and to provide a statement to the company. If you fail to cooperate with your insurance company, it may void your coverage.

3. Your interests versus interests of insurance company - Your interests and those of the other person's insurance company are in conflict. Your interests may also be in conflict with your own insurance company. Even if you are not sure who is at fault, you should contact your own insurance company and advise the company of the incident to protect your insurance coverage.

11

4. There is a time limit to file an insurance claim - Legal rights including filing a lawsuit, are subject to time limits. You should ask what time limits apply to your claim. You may need to act immediately to protect your rights.

5. Get it in writing - You may want to request that any offer of settlement from anyone be put in writing, including a written explanation of the type of damages which they are willing to cover.

6. Legal assistance may be appropriate - You may consult with an attorney before you sign any document or release of claims. A release may cut off all future rights against others, obligate you to repay past medical bills or disability benefits, or jeopardize future benefits. If your interests conflict with your own insurance company, you always have the right to discuss the matter with an attorney of your choice, which may be at your own expense.

7. How to find an attorney - If you need professional advice about a legal problem but do not know an attorney, you may wish to check with relatives, friends, neighbors, your employer, or co-workers who may be able to recommend an attorney. Your local bar association may have a lawyer referral service that can be found in the Yellow Pages.

8. Check a lawyer's qualifications - Before hiring any lawyer, you have the right to know the lawyer's background, training, and experience in dealing with cases similar to yours.

9. How much will it cost? - In deciding whether to hire a particular lawyer, you should discuss, and the lawyer's written fee agreement should reflect:

a. How is the-lawyer to be paid? If you already have a settlement offer, how will that affect a contingent fee arrangement?

b. How are the expenses involved in your case, such as telephone calls, deposition costs, and fees for expert witnesses, to be paid? Will these costs be advanced by the lawyer or charged to you as they are incurred? Since you may be obligated to pay all expenses even if you lose your case, how will payment be arranged?

c. Who will handle your case? If the case goes to trial, who will be the trial attorney?

This information is not intended as a complete description of your legal rights, but as a checklist of some of the important issues you should consider.

*THE SUPREME COURT OF OHIO, WHICH GOVERNS THE CONDUCT OF LAWYERS IN THE STATE OF OHIO, NEITHER PROMOTES NOR PROHIBITS THE DIRECT SOLICITATION OF PERSONAL INJURY VICTIMS. THE COURT DOES REQUIRE THAT, IF SUCH A SOLICITATION IS MADE, IT MUST INCLUDE THE ABOVE DISCLOSURE.

ADVERTISEMENT ONLY

48.     Defendants are sending electronic advertisement emails by way of unauthorized and unsolicited text messages, that do not comply with Ohio and/or federal law.

49.     Defendant KNR is a law firm and lawyers charged with knowing, understanding, and following the applicable laws associated with its actions. Defendants willfully, maliciously, and with reckless disregard for the applicable law and the rights of others failed to comply with applicable laws. Even the Ohio Supreme Court Board of Commissioners on Grievances & Discipline has specifically warned against the actions taken by Defendant KNR.

50.     On April 5, 2013, The Supreme Court of Ohio issued its Opinion 2013-2 relating to "Direct Contact with Prospective Clients: Text Messages." Therein, the Ohio Supreme Court Board of Commissioners on Grievances & Discipline specifically warned:

> "In addition, under Prof. Cond. R. 7.2(c) and (d), the text message must include the name and address of the responsible lawyer or law firm and the lawyer may not solicit prospective clients if the lawyer does not intend to actively participate in the representation. The Board further recommends that lawyers employ "Free to End user" or other technology to avoid creating a cost to the text message recipient and attempt to verify that the text message recipient is not a minor. Finally, the Board advises lawyers to confirm that their text message advertising complies with all applicable federal and state laws, rules, and regulations, including the TCPA, CAN-SPAM Act, and Do Not Call Registry."[22]

51.     Defendants, in particular Defendant KNR has failed to comply with all applicable federal and state laws, including the TCPA, EMAA, and the OCSPA.

52.     The text messages were sent by KNR and/or by Wire2air on KNR's behalf and acting as KNR's agent to recruit and solicit Plaintiffs to become a client of KNR for their personal injury action after being involved in a MVA.

---

[22] The Ohio Supreme Court Board of Commissioners on Grievances & Discipline, Opinion 2013-2, attached hereto as Appendix 3.

53.     Plaintiffs did not expressly consent to receive any text message(s) from Defendants.

54.     Plaintiffs did not give either Defendant their prior express written consent to send telemarketing communications to their wireless phones.

55.     Plaintiffs did not have any pre-existing business relationships with Defendants.

56.     Defendants never clearly and conspicuously disclosed to Plaintiffs that they had consented to receive automated text calls/messages from Defendants – because they never so consented.

## CLASS ACTION ALLEGATIONS

57.     Plaintiffs bring this action on behalf of themselves and all other similarly situated members of a proposed class ("Class") initially defined, but subject to later modification throughout the course of discovery, as:

> **All persons in the State of Ohio who received one or more electronic mail text messages inviting them to call KNR for legal services.**

58.     Plaintiffs do not yet know the extent or scope of Defendants' electronic mail text message advertising campaign and reserves the right to change the proposed class definition or to propose subclasses during this litigation.  Excluded from the Class are Defendants' employees, officers, directors, members; legal representatives, any person who was a former or existing client, or otherwise had a pre-existing business relationship with Defendants at the time they received Defendants electronic mail text message, successors, and assigns; any entity in which Defendants have a controlling interest; any Judge to whom the litigation is assigned; all members of the Judge's family; and all persons who timely and validly request exclusion from the Class.

59.     This action has been brought as a class action, and may be properly maintained, pursuant to Federal Rule of Civil Procedure 23 and case law thereunder.

## Ascertainability

60.     Ascertainability under Federal Rule of Civil Procedure 23 "is implicit rather than explicit in Rule 23."[23]  The identity of individual Class Members is not required.  It is only necessary that the class be ascertainable.  Here, the precise number of Class Members and their identities and addresses are presently unknown to Plaintiff; however, such number, and the identity and address and phone number of each Class Member, can be readily ascertained through the Defendants' business and advertising records and data and/or via mass advertisement.  Class Members may be notified of the pendency of this action by direct mail via Defendants' business records mail and/or electronic mail and/or other electronic and social media means, by identifying current consumers who have been sent unlawful electronic mail text messages under the TCPA and EMAA, and by notifying past Class Members to identify themselves in order to participate by way of affidavit or otherwise, supplemented (if deemed necessary or appropriate by the Court) by published notice.  Plaintiffs reserve their right to modify the definition of the proposed class based on information they and their counsel learn throughout the course of discovery.

## Numerosity

61.     The members of the Class are so numerous that individual joinder of Class Members is impractical. Upon information and belief, Defendants' conduct consisted of a widely distributed text message campaign sent to particular cell phone numbers.  Plaintiffs believe, at a minimum, there are hundreds, if not thousands, of Class Members.  Plaintiffs believe that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

---

[23] *In re Polyurethan Foam Antitrust Litig.*, 2015 U.S. Dist. LEXIS 94785 | 2015-2 Trade Cas. (CCH) P79, 238.

## **Commonality**

62.    This action involves multiple common questions of law and fact, which predominate over any questions affecting individual Class Members. The Common questions of law and fact exist as to all members of the Class. They include, without limitation:

(a)    Whether Defendants violated the TCPA by sending unauthorized electronic mail text messages to Plaintiffs and other members of the Class;

(b)    Whether Defendants violated the EMAA by sending unauthorized electronic mail text messages to Plaintiffs and other members of the Class;

(c)    Whether the equipment Defendants used to send the electronic mail text messages in question was an automatic telephone dialing system as defined by the TCPA and the FCC;

(d)    Whether Defendants acquired the Class Members' cell phone numbers in a written agreement, bearing the signature of the person called;

(e)    Whether the means by which Defendants acquired the Class Members' cell phone numbers clearly and conspicuously informed them that they may receive advertisements or telemarketing messages by means of an automatic telephone dialing system;

(f)    Whether the means by which Defendants acquired the Class Members' cell phone numbers clearly and conspicuously informed them that they were not required to sign or enter into the agreement as a condition of purchasing any property, goods, or services;

(g)    Whether Plaintiffs and the other Class Members are entitled to statutory damages under the TCPA;

(h)    Whether Plaintiffs and other Class Members are entitled to statutory damages under the EMAA;

(i)     Whether Defendants violated the OCSPA, entitling Plaintiffs and the other Class Members to declaratory and injunctive relief under the OCSPA.

(j)     Whether Defendants' actions were knowing or willful and, if so, whether the Court should treble the statutory damages awarded to Plaintiffs and the other members of the Class; and

(k)     Whether Plaintiffs and other members of the Class are entitled to equitable relief, including but not limited to injunctive relief.

### Typicality

63.     Plaintiffs' claims are typical of the claims of the Class. The claims of Plaintiffs and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA, the EMAA, and the OCSPA.

64.     Plaintiffs and Class Members each received at least one electronic mail text message advertisement, advertising KNR's legal services, the commercial availability or quality of any property, goods, or services, without prior express written consent, which Defendants sent or caused to be sent to Plaintiffs and members of the Class.

### Adequate Representation

65.     Plaintiffs are adequate class representatives because their interests do not conflict with the interests of the Class and they have retained counsel competent and experienced in complex class action litigation.  Therefore, the interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

### Superiority

66.     A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by Class Members are likely to exceed millions of dollars.  However, the damages suffered by each individual Class Member are small in

comparison to the burden and expense of individual prosecution. Without the class action device, it would be virtually impossible for Class Members individually to obtain effective redress for the wrongs done to them.   It is desirable to concentrate the litigation of the claims in this Court.  Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Plaintiff and his counsel do not anticipate encountering any unique difficulties in the management of this action as a Class action.

## Injunctive and Declaratory Relief

67.     Separate and distinct from the damages caused by Defendants' unlawful conduct, final injunctive and declaratory class-wide relief is also appropriate pursuant to Ohio Civ. R. Proc. 23(b)(2) and, alternatively, the OCSPA.

68.     The perquisites to maintaining a class action for injunctive and equitable relief exists as Defendants have acted or refused to act on grounds generally applicable to the class thereby making appropriate final injunctive and equitable relief with respect to the class as a whole.

69.     The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

70.     Defendants' actions are generally applicable to the Class as a whole, and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole.

71.     Defendants' pattern, practice, and policy makes declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## COUNT ONE

### (Violation of the Telephone Consumer Protection Act)
### (Violation of 47 U.S.C. § 227 et seq.)

72.     Plaintiffs incorporate by reference all of the foregoing allegations as if fully rewritten herein.

73.     The TCPA provides in pertinent part as follows:

(b) Restrictions on the use of automated telephone equipment

(1) Prohibitions

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –

(A) To make any call (other than a call for emergency purposes or made with the prior express written consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice

••••••••••••••••••••••••••••••••••••••••••••••••••••

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call …

47 U.S.C. § 227(b)(1)(A)(iii).

74.     The FCC regulations provide in pertinent part:

(a)     No person or entity may:

(2)     Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an

artificial prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party.

47  .F.R. § 64.1200

75.     Defendants' electronic mail text messages to Plaintiffs and the other Class members included or introduced an advertisement or constituted telemarketing.

76.     The TCPA defines "telemarketing call," or "telephone solicitation," as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of … goods, or services, which is transmitted to any person."  47 U.S.C. § 227(a)(4).

77.     The TCPA defines an automatic "telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).

78.     Pursuant to the FCC Order, Defendants cannot escape TCPA liability even if they assert they previously had Plaintiffs' and other Class Members' telephone numbers.  The FCC in the FCC Order stated that, "Callers cannot avoid obtaining consumer consent for a robocall simply because they are not "currently" or "presently" dialing random or sequential phone numbers." FCC Order, para. 2.

79.     The FCC went further and stated that, "We reaffirm our previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for that purpose, including when the caller is calling a set list of consumers."  FCC Order, para. 10.

80.     Before sending a text message, the sender must obtain "prior express consent" from the called party.  "Prior express consent" must:

- Be in the form of an agreement in writing, bearing the written or electronic signature of the person providing consent;

- Specify the telephone number to which the person is consenting to be called;

- Clearly and conspicuously authorize the company to call the person using an auto-dialer system or prerecorded message for telemarketing purposes; and

- Clearly and conspicuously disclose that consent is not a condition of purchasing goods or services.

47 C.F.R. § 64.1200(f)(8)

81.     At issue here, Defendants made telephone solicitations, including but not limited to the electronic mail text message recited above, to the cell phone numbers of Plaintiffs and other members of the Class without the required consent/authorization.  Plaintiffs' allegations are not limited to electronic mail text messages they received as they do not yet know the scope and extent of KNR's advertising campaign.

82.     Defendants sent unsolicited commercial/consumer electronic mail text calls to Plaintiffs and other members of the Class using an automated telephone dialing system, as defined under the TCPA and the FCC. Indeed, Defendants have already acknowledged using a platform provided by Wire2Air that has the capability, functionality and "ability to launch Mass & Bulk MMS in seconds."

83.     Defendants sent these electronic mail text calls without first obtaining the called parties' prior express, written consent.

84.     Defendants knew or should have known they lacked prior express, written consent to send these electronic mail text calls.

85.     Defendants sent these electronic mail text calls without first clearly and conspicuously disclosing that the called parties were providing or would provide consent to receive calls using an automatic telephone dialing system or an artificial prerecorded voice.

86.     Defendants violated the TCPA by sending the electronic mail text calls to Plaintiffs and the other members of the Class without first obtaining their prior, written consent.

87.     Defendants violated the TCPA by not providing the required clear and conspicuous disclosures to Plaintiffs and other members of the Class.

88.     Defendants harmed consumers by sending these electronic mail text messages, not only because consumers were subjected to the aggravation that accompanies unsolicited wireless/cellular spam, but also because many consumers pay to receive electronic mail text messages.[24]

89.     The electronic mail text messages sent to Plaintiffs and the other members of the Class were sent using equipment that had the capacity to store telephone numbers retrieved from KNR's database and to dial such numbers.  The equipment can also be modified or programmed to generate and dial random or sequential numbers.  By using such equipment, Defendants were able to send electronic mail text messages simultaneously to hundreds, if not thousands, of cell phone numbers *en masse* without human intervention.

90.     Defendants' electronic mail text calls were made through the use of a short code dialing service and without the prior express written consent of Plaintiff and the other members of the Class without first providing the required disclosures.

---

[24] Defendants' confirm this potential cost on their electronic mail text messages, stating therein that "Message & Data Rates may apply." This also confirms that Defendant KNR was not using Free to End User text messaging as advised by the Supreme Court of Ohio.

91.    Defendants' conduct in sending such electronic mail text messages violates 47 U.S.C. § 227(b)(1)(A)(iii).

92.    Defendants' conduct in sending these electronic mail text messages was a knowing and willful violation of 47 U.S.C. § 227.

93.    As a result of Defendants' violation(s), the members of the Class suffered actual damages by, *inter alia,* having to pay their respective cellular/wireless carriers for the text messages where applicable and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia,* a minimum of $500 in statutory damages for each violation of the TCPA, and up to $1,500.00 for each if the Court determines that Defendants' violations of the TCPA were knowing or willful.

94.    The Court should enjoin Defendants from sending future electronic mail text messages without the written consent of the called party.

## COUNT II

### (Violation of the Ohio Electronic Mail Advertisement Act – O.R.C. § 2307.64)

95.    Plaintiffs incorporate by reference all of the foregoing allegations as if fully rewritten herein.

96.    Plaintiffs bring their cause of action under the EMMA as an alternative to and/or in conjunction with their claims under the TCPA.

97.    Both Plaintiff Lord and Plaintiff Katz received an "electronic mail", via Defendants' unauthorized text messages, as that term is defined under EMAA, via their telecommunication devices, i.e. cell phone.

98.    As defined under the EMMA, "Electronic mail" is not confined to what may be ordinarily understood to be "E-Mails." Instead, the EMMA defines "Electronic Mail" broadly (see

footnote (10), to include electronic messages exchanged between two or more telecommunication devices. The EMMA applies to text messages and/or emails delivered as text messages.

99.     Plaintiffs are recipients as that term is defined under the EMAA.

100.     Defendants sent the electronic mail text messages to Plaintiffs for the purposes of soliciting KNR's legal services. As such, each electronic mail transmitted to Plaintiffs constituted an "advertisement" as that terms is defined under EMAA.

101.     Plaintiffs did not have a pre-existing business relationship with Defendants as that terms is defined under EMMA.

102.     Plaintiffs did not consent or agree to receive the electronic mail text messages transmitted by Defendants.

103.     Plaintiffs received the electronic mail text messages directly from Defendants.

104.     Defendants' electronic mail text messages did not clearly and conspicuously contain their complete business address and electrotonic email address, as required under EMMA.

105.     Defendants' electronic mail text messages did not clearly and conspicuously contain their electronic address, as required under the EMMA.

106.     Defendants' electronic email text messages did not clearly and conspicuously contain the opt-out notice and detailed procedure for declining to receive additional electronic mail text messages, as required under the EMAA.

107.     "The plain text of Ohio's EMAA creates a claim for the mere failure to include certain information…" *Ferron v. Echostar Satellite LLC*, No. 2:06-cv-00453, 2008 U.S. Dist. LEXIS 82841, 2008 WL 4377309 (S.D. Ohio Sept. 24, 2008); *Ferron v. SubscriberBase Holdings, Inc.*, 2009 U.S. Dist. LEXIS 23583 | 2009 WL 650731.

108.    Plaintiffs and the putative Class Members are each entitled to statutory damages, reasonable attorney's fees, court costs, and other costs of bringing the action.

## COUNT III

### (Violation of the Ohio Consumer Sales Practices Act for Injunctive and Declaratory Relief)

109.    Plaintiffs incorporate by reference all of the foregoing allegations as if fully rewritten herein.

110.    Attorneys' actions, practices, and policies towards and/or affecting non-clients are not excluded under the OCSPA.[25] As such, Defendant KNR is a "supplier" and Plaintiffs are "Consumers" who engaged in a "consumer transaction," as those terms are defined under the OCSPA.

111.    Additionally, no privity of contract is required under the OCSPA for a "consumer" to recover against a "supplier" under the OCSPA. Accordingly, Defendant Wire2Air is also a "supplier" who engaged in a "consumer transaction" with Plaintiffs ("Consumers'), as those terms are defined under the OCSPA.

112.    Pursuant to O.R.C. §1345.09(B) Defendants' violation of the TCPA has been determined by a court of law in the State of Ohio to be an unfair, deceptive, and/or unconscionable act or practice, and was committed after the decision containing these determinations has been available for public inspection under division (A)(3) of § 1345.05 of the Ohio revised Code. See *State of Ohio, ex rel. Michael DeWine Attorney General of Ohio v. Darren C. Sizemore*.[26]

113.    As determined in *Sizemore* "Defendant violated R.C. 109.87(B)(1) by initiating telephone calls, by sending text messages, to telephone numbers assigned to cellular services using

---

[25] See <u>Taylor v. First Resolution Invest. Corp</u>., 148 Ohio St.3d 627, 2016-Ohio-3444, 72 N.E.3d 573 (2016), cert denied, 137 S. Ct. 398, 196 L. ed.2d 297 (2016).
[26] Attached hereto as <u>Appendix 4.</u>

an automatic telephone dialing system, absent an emergency purpose or prior express consent from called parties. The conduct is prohibited by the TCPA, 47 U.S.C. 227(b)(1)(A)(iii) and 47 C.F.R. 64.1200(a)(1)(iii)."

114.    Such acts and practices have been ĐECLARED to violate the CSPA, R.C. 1345.01, et seq…in the manner described."

115.    Accordingly, Plaintiffs request declaratory relief in the form of an Order from this Honorable Court declaring Defendants' violations of the TCPA constitute a violation(s) of the OCSPA, and enjoin Defendants from transmitting anymore electronic mail text messages and/or conducting any further acts and practices that violate the TCPA as alleged herein.

## COUNT IV

### (Vicarious Liability as to Defendant Wire2Air)

116.    Plaintiffs incorporate by reference all of the foregoing allegations as if fully rewritten herein.

117.    Defendant Wire2Aire is vicariously liable for Defendant KNR's violations of the TCPA, EMAA, and OCSPA.

118.    Defendant Wire2Air, acting as KNR's agent, provided, authorized, and allowed KNR to use its platform(s), separately and/or jointly, and assisted and/or trained KNR in instructing on how to transmit the illegal electronic mail text messages, in violation of the TCPA, EMAA, and the OCSPA.

119.    The short-code used to transmit one or more of the illegal electronic mail text messages was supplied by and supported with the Wire2Air platform(s).

120.    Further, the personal information of the Plaintiffs and the putative Class Members, i.e. cellular information was transmitted and passed through Wire2Air's platform and web-based

27

services creating a direct connection between the Plaintiffs and the putative Class Members on the one-hand, and Defendants, jointly on the other.

121.     Defendant Wire2Air had actual knowledge of Defendant KNR's uses of Wire2Air's platform(s) and web-based services, and ratified KNR's patterns, practices, and policies that violated the TCPA, EMAA, and OCSPA.

122.     Accordingly, Defendant Wire2Aire is directly and/or indirectly vicariously, and therefore, jointly, liable with KNR for the violations of the TCPA, EMAA, and OCSPA, as alleged herein.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff requests of this Court the following relief, on behalf of himself and all others similarly situated against Defendant:

A.     An Order certifying the proposed Class herein pursuant to Rule 23(b)(1), (2) and (3) of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel of record to represent the Class;

B.     An award to Plaintiffs and members of the Class of statutory damages pursuant to 47 U.S.C. § 227(b) (TCPA), for Defendants' violations of that statute;

C.     If it is found that Defendant willfully and/or knowingly sent or caused to be sent text messages to the Class in violation of the TCPA, an increase by the Court of the award of statutory damages pursuant to 47 U.S.C. § 227(b) prayed for to three times the amount described in the previous paragraph, as authorized by 47 U.S.C. § 227(b)(3), for willful and/or knowing violations.

D.     An award to Plaintiffs and members of the Class of statutory damages pursuant to the EMMA, for Defendants' violations of that statute;

E.     An injunction against Defendants, prohibiting Defendants from committing further violations of the TCPA and the regulations promulgated thereunder;

F.     An Order declaring that Defendants' violations of the TCPA are a violation of the OCSPA, and enjoin Defendants from continuing their acts and practices in violation of the TCPA.

G.     An Order finding Defendant Wire2Air vicariously and jointly liable with KNR for the violations of the TCPA, EMAA, and OCSPA, as alleged;

H.      Punitive damages;

I.      Prejudgment interest;

J.      Attorney's fees, costs of suit, including, without limitation, expert witness fees and Class Administration fees; and

K.      Such other and further legal and equitable relief, including exemplary damages, as this Court may deem proper.


Respectfully submitted,

 /s/  *Thomas J. Connick*
Thomas J. Connick (0070527)
Gary A. Vick, Jr. (0071495)
CONNICK LAW, LLC
25550 Chagrin Blvd., Suite 101
Beachwood, Ohio  44122
PH: (216) 364-0512 – FX: (216) 609-3446
tconnick@connicklawllc.com
gavickjr@connicklawllc.com

*Attorneys for Plaintiffs*


## DEMAND FOR JURY TRIAL

Plaintiff and the class hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38.


/s/  *Thomas J. Connick*
Thomas J. Connick (0070527)